IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| TERRY PATRICK GORMAN and<br>KAREN GORMAN,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST CONSOLIDATED MORTGAGE<br>COMPANY; MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.;<br>DEUTSCHE BANK NATIONAL TRUST<br>COMPANY, AS INDENTURE TRUSTEE<br>UNDER THE INDENTURE RELATING<br>TO IMH ASSETS, CORP.,<br>COLLATERALIZED ASSET-BACKED<br>BONDS, SERIES 2005-7;<br>RAY T. DEWITT, III; and<br>GMAC MORTGAGE, LLC,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § § § | Case No. 4:12-CV-98 |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. & DEUTSCHE BANK NATIONAL TRUST COMPANY'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT GMAC MORTGAGE, LLC'S MOTION TO DISMISS**

The following are pending before the court:

1. Defendants Deutsche Bank National Trust Company ("Deutsche"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and GMAC Mortgage, LLC's ("GMAC") motion to dismiss Plaintiffs' first amended complaint under Rule 12(b)(6) (docket entry #12);

2. Plaintiffs' response to second motion to dismiss (docket entry #14); and

3. Defendants' reply to Plaintiffs' response to second motion to dismiss (docket entry #16).

1. Defendants MERS & Deutsche's motion for summary judgment and incorporated brief in support thereof (docket entry #30);

2. Plaintiffs' response to the MERS and Deutsche motion for summary judgment and incorporated brief in support thereof (docket entry #36); and

3. Defendants MERS & Deutsche's reply to Plaintiffs' response to Defendants' motion for summary judgment (docket entry #38).

---

1. Plaintiffs' motion to strike Defendants' MSJ evidence and brief in support thereof (docket entry #35); and

2. Defendants MERS & Deutsche's response to Plaintiffs' motion to strike Defendants' MSJ evidence (docket entry #39).

---

1. Plaintiffs' motion to extend time under Rule 4(m) as to Defendant DeWitt (docket entry #24);

2. Plaintiffs' motion for substituted service as to Defendant DeWitt (docket entry #25);

3. Plaintiffs' motion to extend time under Rule 4(m) as to Defendant First Consolidated (docket entry #26);

4. Plaintiffs' motion for substituted service as to Defendant First Consolidated (docket entry #27); and

5. Defendants' objection to Plaintiffs' motions to extend time for service and for substituted service upon Defendants DeWitt and First Consolidated Mortgage Co. (docket entry #29).

---

1. Plaintiffs' motion to add newly involved indispensable parties in accord with Rule 35(c) and brief in support thereof (docket entry #53);

2. Defendants Deutsche & MERS's opposition and response to Plaintiffs' motion to add newly involved indispensable parties (docket entry #56); and

3. Plaintiffs' reply to Defendants' response to Plaintiffs' motion to add newly involved

indispensable parties (docket entry #58).

Having considered the pending motions and the responsive briefing thereto, the court finds that (1) the Plaintiffs' motions to extend time for service and for substituted service on Defendants DeWitt and First Consolidated should be denied, (2) the Plaintiffs' motion to add newly involved indispensable parties should be denied, (3) the Plaintiffs' motion to strike the Defendants' summary judgment evidence should be denied, and (4) the Defendants' motion to dismiss and motion for summary judgment should be granted.

## **PROCEDURAL HISTORY**

On January 17, 2012, the Plaintiffs filed their original petition against the above-referenced Defendants in the 401st Judicial District Court of Collin County, Texas. On February 17, 2012, Defendants Deutsche Bank National Trust Company, Mortgage Electronic Registration Systems, Inc., and GMAC Mortgage, LLC removed this action to this court based on diversity jurisdiction. In doing so, the removing Defendants stated that the Plaintiffs fraudulently joined Texas citizens Defendants Ray T. Dewitt and First Consolidated Mortgage Company (hereafter "First Consolidated"). Accordingly, the removing Defendants argued that the court should disregard the non-removing Defendants' citizenship for purposes of determining jurisdiction. The Plaintiffs did not file a motion to remand.

On October 11, 2012, the court issued a notice of impending dismissal. In its notice, the court stated that its records indicated that more than 120 days had passed from the filing of the complaint and that Defendant Ray T. Dewitt, III had not been served. The Plaintiffs were informed that the action would be dismissed without prejudice as to Defendant Dewitt unless the Plaintiffs could show cause for the failure to timely complete service of process.

On October 23, 2012, the Plaintiffs responded to the court's notice of impending dismissal. Additionally, the Plaintiffs filed a motion to extend time to serve Defendant Dewitt as well as a motion for substituted service as to Defendant Dewitt. Thereafter, on October 25, 2012, the Plaintiffs advised the court that the court's docket sheet incorrectly reflected that Defendant First Consolidated Mortgage Company entered an appearance in this matter. The Plaintiffs advised the court that Defendant First Consolidated had not been served with process because Defendant First Consolidated's registered agent, Defendant Dewitt, was evading service of process. Accordingly, the Plaintiffs filed a motion to extend time to serve Defendant First Consolidated as well as a motion for substituted service as to Defendant First Consolidated.

In response to the Plaintiffs' motions, Defendants Deutsche Bank National Trust Company, Mortgage Electronic Registration Systems, Inc., and GMAC Mortgage, LLC filed an objection, arguing that, among other things, because the Plaintiffs fraudulently joined Defendants Dewitt and First Consolidated, the Plaintiffs have no viable causes of action against them. The Plaintiffs did not respond to the removing Defendants' argument.

On February 28, 2013, the court ordered the Plaintiffs to file a brief in response to the removing Defendants' fraudulent joinder argument raised in the notice of removal by March 29, 2013. The Plaintiffs timely filed their brief. In their brief, the Plaintiffs state that they did not initially challenge the Defendants' fraudulent joinder argument because the Plaintiffs were unable to locate DeWitt and First Consolidated.

The court notes that the Plaintiffs did not challenge the Defendants' fraudulent joinder argument until prompted to do so by the court. The court further notes that it was not necessary for the Plaintiffs to locate DeWitt and First Consolidated before challenging the Defendants' fraudulent

joinder argument. Finally, even if the Plaintiffs had timely filed a motion to remand by challenging the Defendants' fraudulent joinder argument, the motion would have been denied. As explained more fully below, the Plaintiffs have failed to demonstrate a reasonable basis for recovery against any of the Defendants. Accordingly, the Plaintiffs' motions to extend time for service and for substituted service on Defendants DeWitt and First Consolidated (docket entry #'s 24, 25, 26 and 27) are **DENIED**.

On May 16, 2013, the Plaintiffs filed a motion to "add," or actually substitute, allegedly indispensable parties Ocwen Loan Servicing, LLC ("Ocwen") and IMPACT Funding Corporation ("IMPACT") pursuant to Rule 25(c) of the Federal Rules of Civil Procedure. According to the Plaintiffs, the underlying note and mortgage were transferred from GMAC to Ocwen. Further, the Plaintiffs claim that IMPACT is the owner of the Plaintiffs' note and mortgage. The Plaintiffs seek to file a second amended complaint substituting Ocwen and IMPACT as parties for GMAC.

The court is not inclined to grant the Plaintiffs' motion to substitute parties. As noted by the Defendants, the Plaintiffs have no basis to substitute IMPACT because the transfer of the mortgage loan occurred prior to the filing of this lawsuit. *Harris v. Nat'l Seal Co. Enhanced Severance Pay Plan*, 2007 WL 1643225, at *2 (S.D. Tex. 2007) ("Rule 25(c) does not apply to transfers of interest that occur 'prior to the commencement of a lawsuit.' *ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 190 (8th Cir. 1995). Rule 25's provisions all address changes to a party that occur after a lawsuit is filed, not before."). Further, in light of the bankruptcy court's ruling, as more fully discussed below, and the fact that GMAC's interest as the loan servicer was merely transferred to Ocwen, the Plaintiffs' proposed substitution would be futile. *In re Covington Grain Co., Inc.*, 638 F.2d 1357, 1361 (5th Cir. 1981) ("Under Rule 25(c), the court may direct that the person to whom

the interest has been transferred be substituted. The Rule, however, is procedural only and does not affect the substantive rights of the parties which are determined by state law."); *Fed. Sav. & Loan Ins. Corp. v. McLean*, 1988 WL 220584, at *2 (N.D. Tex. 1988). As more fully explained below, the Plaintiffs are not relieved from their obligation to pay their mortgage simply because GMAC's interest as the loan servicer was transferred to Ocwen. Therefore, the Plaintiffs' "Motion to Add Newly Involved Indispensable Parties in Accord with Rule 35(c) [sic]" (docket entry #53) is **DENIED**.

On May 4, 2016, Defendant GMAC filed "GMAC Mortgage, LLC's Bankruptcy Status Report" (docket entry #62). The Plaintiffs did not file any objections to the status report. Therefore, the court adopts the status report and restates portions of the status report (not necessarily in the same order) as follows:

> On May 14, 2012 (the "Petition Date"), Residential Capital, LLC and certain of its direct and indirect subsidiaries, including GMACM (collectively, the "Debtors"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The Debtors' Chapter 11 cases (the "Bankruptcy Cases") are being jointly administered, indexed at case number 12-12020 (MG).
>
> On July 27, 2012, the undersigned caused to be filed in this present matter a Notice of Bankruptcy and Suggestion of Automatic Stay (the "Bankruptcy Notice") that informed [this court] and the parties of the status of the Bankruptcy Cases and the automatic stay imposed by section 362 of the United States Bankruptcy Code. Specifically, the Bankruptcy Notice indicated that all causes of action in the First Amended Complaint, but for the Declaratory Relief, were stayed by the Automatic Stay. Thereafter, on October 12, 2012, [this court] formally stayed the entire matter as to GMACM.
>
> By Order dated November 21, 2012, the [Bankruptcy] Court approved the sale of the Debtors' mortgage origination and servicing platform to Ocwen Loan Servicing LLC ("Ocwen") and its designee, Walter Investment Management Corp. ("Walter") [Docket No. 2246] (the "Ocwen Sale Order"). The transactions comprising the sale of the Debtors' mortgage origination and servicing platform (the

"Sale") closed in two parts: the sale to Walter closed on January 31, 2013, and the sale to Ocwen closed on February 15, 2013.

On December 11, 2013, the Bankruptcy Court entered its Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors (the "Confirmation Order") [Bankruptcy Docket 6065] approving the terms of the Chapter 11 plan, as amended (the "Plan"). The effective date under the Plan occurred on December 17, 2013 (the "Effective Date").

Both the Plan and Confirmation Order provide for the extension of the automatic stay through the Effective Date and provide that the injunctive provisions of the Plan and Confirmation Order will remain in full force and effect following the Effective Date. (Confirmation Order, ¶ 63(g); Plan, Art. XIII.K). Moreover, both Section G of Paragraph 40 of the Confirmation Order and Article IX.I of the Plan contain an "Injunction" provision that, among other things, enjoins all parties from "commencing or continuing in any manner or action or other proceeding of any kind" relating to claims that are released under the Plan.

Based on a review of the Debtors' claims register, Plaintiffs, Terry Patrick Gorman and Karen Gorman, filed a proof of claim in Debtors' Bankruptcy Cases, being claim 4834 ("Claim 4834"). The basis of Claim 4834 was premised on the allegations set forth in the First Amended Complaint filed in the present action. (A Copy of Claim 4834 is attached as Exhibit "A.") Claim 4834 was expunged and dismissed with prejudice pursuant to the Order Sustaining ResCap Borrower Claims Trust's Objection to Proof of Claim No. 4834 Filed by Terrance P. Gorman and Karen Gorman (the "Order") [Bankruptcy Docket 9773], filed in the Bankruptcy Cases on March 22, 2016, as full and final adjudication of all causes of action for damages asserted in the First Amended Complaint against GMACM. Accordingly, Plaintiffs are barred from any continued prosecution of all claims for damages, but as noted in the Bankruptcy Notice, may pursue the claim for Declaratory Relief, as against GMACM. However, as a result of the Sale, no Debtor services the loan that is the subject of this proceeding and GMACM is unable to provide any non-monetary relief sought.

On March 13, 2015, the Bankruptcy Court entered the Order Granting the Motion for Entry of an Order Establishing Procedures Enforcing Injunctive Provisions of Plan and Confirmation ("Procedures Order") [Bankruptcy Docket 8303]. The Procedures Order, (i) bars Plaintiffs from continuing to prosecute this action against GMACM under the injunction provisions of the Plan and Confirmation Order, and (ii) permits the Liquidating Trust to seek further relief from the Bankruptcy Court in the dismissal of this action with respect to the GMACM.

Accordingly, Plaintiffs are barred from continuing to pursue the damages claims set forth in the First Amended Complaint against GMACM as such claims are Released Claims pursuant to the injunction provided in the Confirmation Order and Plan as a result of the Order. As a result of the Sale, GMACM is not the loan servicer of the loan that is subject of this proceeding and GMACM is unable to provide any non-monetary relief sought by Plaintiffs. Accordingly, Plaintiffs cannot pursue any of the causes of action in the First Amended Complaint against GMACM and dismissal of GMACM from this matter is therefore appropriate.

## PLAINTIFFS' MOTION TO STRIKE SUMMARY JUDGMENT EVIDENCE

The Plaintiffs have moved the court to strike the Defendants' summary judgment evidence. Attached to the Defendants' motion for summary judgment is the affidavit of Juan Aguirre. Mr. Aguirre references seven documents in his affidavit. Mr. Aguirre is the Manager-Litigation Support for GMAC. GMAC is the servicer of the Plaintiffs' mortgage loan. Mr. Aguirre is responsible for reviewing GMAC's business records to confirm facts in certain litigated cases. Mr. Aguirre is the custodian of the business records attached to his affidavit. According to the affidavit, Mr. Aguirre's testimony is based on his personal knowledge or knowledge derived from his review of the business records of which he is the custodian.

The Plaintiffs argue that Mr. Aguirre's affidavit does not comply with FED. R. CIV. P. 56(c)(4) and is hearsay. The court disagrees. The Defendants' summary judgment evidence meets the standards set forth in Rule 56(c)(4) as well as the Federal Rules of Evidence. The Plaintiffs' motion to strike summary judgment evidence (docket entry #35) is **DENIED**.

## FACTUAL BACKGROUND

On May 9, 2005, the Plaintiffs executed a Texas Home Equity Adjustable Rate Note ("the Note") in the principal amount of $262,500.00. The lender was First Consolidated Mortgage Company. The Note provides, in pertinent part, as follows:

1. **BORROWER'S PROMISE TO PAY**

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **9.490**%. The interest rate I will pay may change in accordance with Section 4 of this Note.

4. **INTEREST RATE AND MONTHLY PAYMENT CHANGES**

   **(A)    Change Dates**

The initial interest rate I will pay may change on the first day of **June, 2007**, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

   **(D)    Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **12.4900**% or less than **9.4900**%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE and ONE/HALF** percentage points (**1.50**%) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than **16.4900**% or less than **9.4900**%.

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**

   **(B)    Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   **(C)    Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means. This Note may not

be accelerated because of a decrease in the market value of the property described above or because of the property owner's default under any indebtedness not evidenced by this Note or the Security Instrument.

**8.     GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

**9.     OBLIGATIONS OF PERSONS UNDER THIS NOTE**

Subject to the limitation of personal liability described below, each person who signs this Note is responsible for ensuring that all of my promises and obligations in this Note are performed, including the payment of the full amount owed.  Any person who takes over these obligations is also so responsible.

I understand that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that this Note is given without personal liability against each owner of the property described above and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud.  This means that, absent such actual fraud, the Note Holder can enforce its rights under this Note solely against the property described above and not personally against any owner of such property or the spouse of an owner.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 9 shall not impair in any way the right of the Note Holder to collect all sums due under this Note or prejudice the right of the Note Holder as to any promises or conditions of this Note.

**11.    SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, the Security Instrument, dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note.

Concurrent with the execution of the Note, the Plaintiffs executed a Texas Home Equity

Security Instrument which granted a lien on the property located at 2812 Browning Drive, Plano,

Texas 75093.  The security instrument was assigned to Deutsche on January 2, 2009.  The Plaintiffs

also executed the following documents: (1) a Texas Home Equity Adjustable Rate Rider; (2) a Texas Home Equity Affidavit and Agreement; (3) a Disclosure Statement regarding the Note's adjustable interest rate; and (4) a Notice Concerning Extensions of Credit Defined by Section 50(a)(6), Article XVI, Texas Constitution.

The Plaintiffs defaulted on the Note by failing to make their monthly payments. It appears from the summary judgment evidence that the Plaintiffs have not made a loan payment since May 2008.

On July 6, 2011, the Defendants filed an application for expedited foreclosure proceeding pursuant to Rule 736 of the Texas Rules of Civil Procedure in Collin County, Texas. The foreclosure action was ultimately dismissed due to the filing of the instant lawsuit. As such, no foreclosure sale occurred.

In their first amended complaint, the Plaintiffs alleged 34 counts. Since the court is not permitting the Plaintiffs to belatedly serve Defendants DeWitt and First Consolidated, counts 1, 5, 9, 13, 20, 24, and 31 are no longer viable since they pertain solely to DeWitt and First Consolidated. Additionally, the court notes that since the case was stayed as to GMAC at the time the remaining Defendants filed their motion for summary judgment, GMAC did not participate in the motion for summary judgment. However, GMAC's motion to dismiss is ripe for consideration on the same grounds as the remaining Defendants' motion for summary judgment.

## LEGAL STANDARD

### DISMISSAL STANDARD

In passing on a Rule 12(b)(6) motion, a court must accept all of the plaintiff's allegations as true. *Ballard v. Wall*, 413 F.3d 510, 514 (5th Cir. 2005). A claim will survive an attack under Rule

12(b)(6) if it "may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007). In other words, a claim may not be dismissed based solely on a court's supposition that the pleader is unlikely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id.* at 563 n.8. Although detailed factual allegations are not required, a plaintiff must provide the grounds of its entitlement to relief beyond mere "labels and conclusions;" "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The complaint must be factually suggestive, so as to "raise a right to relief above the speculative level," *id.* at 555, and into the "realm of plausible liability." *Id.* at 557 n.5. Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted). The substantive law identifies which facts are material. *See id.* at 248.

Both parties have a responsibility in the summary judgment process. *Celotex*, 477 U.S. at 323–24. First, the party seeking summary judgment must show that the admissible evidentiary material of record and any affidavits submitted by the nonmoving party are insufficient to permit the nonmoving party to carry its burden of proof. The nonmoving party must then set forth specific facts showing that there is a genuine issue for trial and may not rest upon the mere allegations or denials of his pleadings. FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 248. "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Roach v. Allstate Indemnity Co.*, 2012 WL 1478745 (5th Cir. 2012), citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

## DISCUSSION AND ANALYSIS

1. **NONRECOURSE PROVISIONS OF THE NOTE AND SECURITY AGREEMENT**

According to the first amended complaint, the Plaintiffs allege that GMAC, acting as the agent for MERS and Deutsche, demanded that the Plaintiffs make personal payments on the Note when the Plaintiffs failed to make their monthly note payments. The Plaintiffs claim that such demands were made despite the fact that the Plaintiffs are not personally liable on this nonrecourse note.

The Plaintiffs' argument, however, is not tenable. While the Plaintiffs' note is, in fact, a nonrecourse note, the Note itself provides that the Defendants may demand payment on the same. "A nonrecourse note has the effect of making a note payable out of a particular fund or source, namely, the proceeds of the sale of the collateral securing the note." *Murphy v. Wells Fargo Bank, N.A.*, 2013 WL 510129, *5 (Tex. App. – Houston [14th Dist.] 2013, pet. filed), citing *Fein v. R.P.H.,*

*Inc.*, 68 S.W.3d 260, 266 (Tex. App. – Houston [14th Dist.] 2002, pet. denied). "'[U]nder a nonrecourse note, the maker does not personally guarantee repayment of the note and will, thus, have no personal liability.'" *Id.*, quoting *Fein*, 68 S.W.3d at 266. "If a maker of a nonrecourse note elects to not repay the note, he is not exposed to personal liability, but instead, takes the risk that the collateral securing the note will be lost if the holder decides to enforce its security interest in the collateral." *Id.*, citing *Fein, supra.*

Here, the Defendants initiated foreclosure proceedings against the Plaintiffs' property after the Plaintiffs defaulted on the Note. It appears that the Plaintiffs, in turn, brought the instant action to prevent the impending foreclosure. The Plaintiffs' untenable argument that the Defendants were not permitted to demand payment on the Note is nonsensical. Further, since the foreclosure has yet to occur, and the Plaintiffs have apparently been living at the property for a number of years now without making any payments on the Note, the court finds that the Plaintiffs have failed to offer any summary judgment evidence or any set of facts, taken as true, that would support the Plaintiffs' argument.

The following claims rely on this faulty nonrecourse theory: (1) Count 10 – Usury by MERS; (2) Count 11 – Usury by Deutsche; (3) Count 12 – Usury by GMAC; (4) Count 14 – Breach of Contract by MERS; (5) Count 15 – Breach of Contract by Deutsche; (6) Count 16 – Breach of Contract by GMAC; (7) Count 17 – Violation of the Texas Debt Collection Practices Act by MERS; (8) Count 18 – Violation of the Texas Debt Collection Practices Act by Deutsche; (9) Count 19 – Violation of the Texas Debt Collection Practices Act by GMAC; (10) Count 21 – Predatory and Unconscionable Lender Practices Act by MERS; (11) Count 22 – Predatory and Unconscionable Lender Practices Act by Deutsche; (12) Count 23 – Predatory and Unconscionable Lender Practices

Act by GMAC; (13) Count 25 – Lender Liability-Special Relationship violation by MERS; (14) Count 26 – Lender Liability-Special Relationship violation by Deutsche; (15) Count 27 – Lender Liability-Special Relationship violation by GMAC; (16) Count 28 – Conspiracy between First Consolidated, MERS and Deutsche; and (17) Count 29 – Conspiracy between MERS, Deutsche and GMAC. Based on the foregoing, all of the above-referenced claims must fail; the motion for summary judgment (docket entry #30) and motion to dismiss (docket entry #12) said claims are **GRANTED**.

    2.    **FRAUD AND FRAUD IN THE INDUCEMENT**

The Defendants argue that the economic loss rule bars the Plaintiffs' claims for fraud (Counts 2-4) and fraud in the inducement (Counts 6-8). The court agrees. Parties to a contract may breach duties in tort or contract or both. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). However, tort obligations "are in general obligations imposed by law—apart and independent of promises made." *Sw. Bell Tel. Co. v. Delanney*, 809 S.W.2d 493, 494 (Tex. 1991) (internal quotation omitted). Therefore, "if the defendant's conduct . . . would give rise to liability *independent of the fact that a contract exists* between the parties, the plaintiff's claims may also sound in tort." *Id*. (emphasis added). But if a tort claim arises solely from the parties' contractual relationship, Texas courts disallow such a claim. *See, e.g., Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 777 (Tex. App.—Corpus Christi 2003, no pet.); *Southstar Corp. v. St. Paul Surplus Lines Ins. Co.*, 42 S.W.3d 187, 193–94 (Tex. App.—Corpus Christi 2001, no pet.). Here, Plaintiffs' tort claims flow solely from the Note and the security agreement, because they would not exist but for the contractual relationship between the parties. Accordingly, the motion for summary judgment (docket entry #30) and the motion to dismiss (docket entry #12) the Plaintiffs' claims for fraud and fraud in the

inducement are **GRANTED**.[1]

## CONCLUSION

Based on the foregoing, the court finds as follows:

1. Defendants Deutsche Bank National Trust Company ("Deutsche"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and GMAC Mortgage, LLC's ("GMAC") motion to dismiss Plaintiffs' first amended complaint under Rule 12(b)(6) (docket entry #12) is **GRANTED**;

2. Defendants MERS & Deutsche's motion for summary judgment (docket entry #30) is **GRANTED**;

3. Plaintiffs' motion to strike Defendants' MSJ evidence (docket entry #35) is **DENIED**;

4. Plaintiffs' motion to extend time under Rule 4(m) as to Defendant DeWitt (docket entry #24) is **DENIED**;

5. Plaintiffs' motion for substituted service as to Defendant DeWitt (docket entry #25) is **DENIED**;

6. Plaintiffs' motion to extend time under Rule 4(m) as to Defendant First Consolidated (docket entry #26) is **DENIED**;

7. Plaintiffs' motion for substituted service as to Defendant First Consolidated (docket entry #27) is **DENIED**; and

8. Plaintiffs' motion to add newly involved indispensable parties in accord with Rule 35(c) [sic] (docket entry #53) is **DENIED**.

IT IS SO ORDERED.
    **SIGNED this the 7th day of February, 2017.**

_Richard A. Schell_
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE

---

[1] The remaining claims are as follows: (1) Count 30 – Request for Declaratory Judgment Relief; (2) Count 32 – Attorneys' Fees; (3) Count 33 – Exemplary Damages; and (4) Count 34 – Pre and Post Judgment Interest. Since the Plaintiffs' substantive claims fail, the Plaintiffs' remaining claims also fail.